**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| BERTHA CAMPOS, | ) | NO. CV 09-06213 SS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM DECISION AND ORDER** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————————— | ) | |

**I.**

**INTRODUCTION**

Bertha Campos ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge.  For the reasons stated below, the decision of the Agency is AFFIRMED.

## II.

### PROCEDURAL HISTORY

On July 17, 2007, Plaintiff filed applications for DIB and SSI. (Administrative Record ("AR") 83, 93).  Plaintiff alleged a disability onset date of September 7, 2005, due to carpal tunnel and tendonitis of both wrists.  (AR 83, 91, 114).  The Agency denied both applications on October 5, 2007.  (AR 20).  Because this case had been designated as a "prototype" case, the first level of appeal was a hearing before an administrative law judge.  (Id.).  On November 7, 2007, Plaintiff requested a hearing, (AR 82), which was held before Administrative Law Judge ("ALJ") Richard A. Urbin on September 9, 2008.  (AR 38).  On September 29, 2008, the ALJ issued an unfavorable decision.  (AR 21).  On November 10, 2008, Plaintiff requested review of the hearing decision, (AR 4), which the Appeals Council denied on July 23, 2009. (AR 1).  Plaintiff filed the instant Complaint on September 8, 2009.

## III.

### FACTUAL BACKGROUND

Plaintiff was born on May 1, 1947, (AR 110), and speaks only Spanish.  (AR 113).  Prior to her alleged disability onset date, Plaintiff worked as an assembler and a housekeeper.  (AR 115, 121, 129). Plaintiff reports that on February 25, 2005, she began to notice a gradual onset of pain to both wrists throughout the workday as a result of the repetitive use of her hands.  (AR 211).  Plaintiff was working as an assembler and was responsible for operating a machine that created parts for water sprinklers.  (Id.).  Plaintiff reported her symptoms to

2

her employer on March 3, 2005, and began seeking treatment later that same day.  (Id.).

**A.   Plaintiff's Medical History**

From March 3, 2005 until June 30, 2005, Plaintiff sought treatment for wrist pain at the Foothill Industrial Medical Clinic.  (AR 158, 174-75).  On March 3, 2005, Plaintiff reported that she injured both wrists while working on a machine.  (AR 175).  On March 9, 2005, Plaintiff reported swelling and tenderness in her wrists as well as numbness in her hands.  (AR 172).  Also on March 9, 2005, Dr. Syed Saquib[1] examined Plaintiff's wrists, dispensed medication, and recommended physical therapy.  (AR 192).  Dr. Saquib concluded that Plaintiff could return to work the same day, but must avoid excessive use of her hands and wear a splint.  (Id.).  Dr. Saquib further concluded that Plaintiff should seek treatment for three to four weeks and should not lift, push, or pull over ten pounds.  (Id.).

On March 22, 2005, Plaintiff reported that her condition was "about the same" as before.  (AR 170).  On April 22, 2005, Plaintiff again reported that her condition was "[e]ssentially [the] same."  (AR 167).  On June 30, 2005, Plaintiff reported swelling and pain in her wrists.  (AR 158).

---

[1]   Dr. Saquib's name is handwritten and difficult to read.  (AR 192).

3

The individual treatment notes from the Foothill Industrial Medical Clinic are difficult to read.  (AR 158-75).  However, Dr. Dennis Ainbinder ("Dr. Ainbinder") summarized Plaintiff's treatment at the Foothill Industrial Medical Center in a January 2, 2007 report as follows:

> [Plaintiff] sought initial treatment at Foothill[] Medical Center where she was examined by A-Hafudh Al-Pachachi, M.D., who diagnosed sprain/strain, wrist; carpal tunnel syndrome.  X-rays were taken.  A cock-up splint was dispensed.  Medication was prescribed.  A course of physical therapy was recommended.  The patient was to return to modified duties, consisting of limited use of the hands, no lifting, pushing or pulling over ten pounds and use of the splints.

> [Plaintiff] continued treatment with Foothill[] Medical Center through June 2005, consisting of medication and physical therapy, which did not significantly help her symptomatology.  A referr[al] to a hand specialist was also recommended.  She continued working modified duties.

(AR 211).

On May 11, 2005, Dr. Fares Elghazi performed an electrodiagnostic medicine evaluation on Plaintiff which included a nerve conduction study.  (AR 176-77).  Dr. Elghazi concluded that Plaintiff's test

results were consistent with the presence of mild carpal tunnel syndrome on the right side with no denervation signs. (AR 181).

In July of 2005, Plaintiff sought treatment at U.S. HealthWorks Medical Group. (AR 193). On July 13, 2005, Dr. Rafael Chavez diagnosed Plaintiff with bilateral hand/wrist tendonitis. (Id.). Dr. Chavez determined that Plaintiff could return to work the same day as long as she limited the use of her hands and did not lift, pull, or push more than ten pounds. (Id.).

On July 16, 2005, Plaintiff reached a workers' compensation settlement with her employer regarding her alleged wrist injuries. (AR 238). Plaintiff's employer agreed to pay Plaintiff $16,000.00 as an award, and $12,000 of that award was paid directly to Plaintiff. (AR 238, 240).

In September of 2005, Plaintiff sought treatment at the Occupational Orthopedic Medical Group. (AR 194). On September 7, 2005, Dr. Robert Reisch diagnosed Plaintiff with forearm/wrist tendonitis and concluded that Plaintiff's condition was "improving." (Id.). Dr. Reisch instructed Plaintiff to "return to work at once with no limitations." (Id.).

On December 27, 2005, Dr. Gary Tanner, a chiropractor, submitted a Primary Treating Physician's Progress Report in which he diagnosed Plaintiff with carpal tunnel syndrome. (AR 266). Again on March 21, 2006, Dr. Tanner submitted a Primary Treating Physician's Progress Report in which he reported the same diagnosis. (AR 265). Finally, on

March 28, 2006, Dr. Tanner submitted a Primary Treating Physician's Progress Report in which he reported the same diagnosis.  (AR 264).

**B.   <u>Examining Medical Sources</u>**

On November 7, 2006, Dr. Ainbinder conducted an orthopedic evaluation of Plaintiff's wrists as an "Agreed Medical Examiner" in connection with her worker's compensation appeal.  (AR 246).  Dr. Ainbinder reported that Plaintiff was taking only Advil for pain and no other medications.  (AR 249).  Dr. Ainbinder further reported that Dr. M. Katakia performed neurological studies on Plaintiff's upper extremities on December 14, 2006 and that the results were "within normal limits."  (AR 252).  Dr. Ainbinder diagnosed Plaintiff with overuse syndrome/tendinitis of both wrists, (<u>id.</u>), and found that Plaintiff had lost twenty percent of her preinjury capacity for gripping with both upper extremities.  (AR 251).  Dr. Ainbinder concluded that the "diagnostic studies [were] within normal limits and not compatible with carpal tunnel syndrome."  (AR 252).

Dr. Ainbinder summarized his findings as follows:

For all intents and purposes, [Plaintiff's] symptoms have plateaued and she can be considered as having reached <u>maximal medical improvement (MMI)</u> and is <u>permanent and stationary</u>.  The patient should have been considered permanent and stationary by the beginning of October 2005. The treatment that was provided by Dr. Reisch was medically appropriate and reasonable.  All subsequent treatment was not

6

1    medically warranted or reasonable.  The patient was capable
2    of working modified duties during the period of receiving
3    treatment.

4

5  (AR 253) (emphasis in original).  Finally, Dr. Ainbinder concluded that
6  Plaintiff did not appear to be a "Qualified Injured Worker for
7  Vocational Rehabilitation purposes."  (AR 254).

8

9     On September 11, 2007, Dr. Zaven Bilezikjian conducted an
10  examination of Plaintiff at the request of the Agency.  (AR 273, 277).
11  Dr. Bilezikjian diagnosed Plaintiff with "[r]epetitive motion injury,
12  both wrists, hands and forearms with tendonitis and early carpal tunnel
13  syndrome, bilaterally."  (AR 276).  Dr. Bilezikjian assessed Plaintiff
14  as having the following limitations:

15

16    Based on today's examination, it is the examiner's
17    opinion from an orthopaedic standpoint that the claimant is
18    able to push, pull, lift, and carry 20 pounds occasionally
19    and 10 pounds frequently.  Walking and standing can be done
20    six hours in an [eight]-hour day with normal breaks.  No
21    assistive device is required for ambulation.  Postural
22    activities, i.e. bending, kneeling, stooping, crawling, and
23    crouching can be done on a frequent basis.  Agility, i.e.
24    walking on uneven terrain, climbing ladders, or working at
25    heights can be done without restrictions.  Use of the hands

26

27

28

1    for fine manipulation can be done on a frequent basis and

2    gross manipulation can be done on a frequent basis.

3

4 (AR 276-77).

5

6     Dr. Bilezikjian's finding that Plaintiff could use her hands for

7 fine manipulation on a frequent basis was not his initial finding.  (AR

8 279).  Indeed, Dr. Bilezikjian initially limited Plaintiff to using her

9 hands for fine manipulation on an occasional basis.  (Id.).  However,

10 Dr. L. C. Limos, a state agency physician, contacted Dr. Bilezikjian and

11 asked him to reconsider his finding.  (Id.).  Dr. Limos argued that the

12 objective medical evidence supported a finding that Plaintiff could use

13 her hands for fine manipulation on a frequent basis and that Plaintiff

14 was "not fully credible." (Id.).  Dr. Limos pointed out that Plaintiff

15 was not taking any medication for pain and was not using any splints or

16 braces.  (Id.).  Dr. Limos further noted that there was "no atrophy" and

17 "only some tenderness." (Id.).  Finally, Dr. Limos pointed to the fact

18 that Plaintiff drives her grandchildren to and from school, drives ten

19 miles, does minor sweeping, uses a broom, does a few dishes, and

20 straightens the bedroom.  (Id.).  Ultimately, Dr. Bilezikjian amended

21 his finding regarding Plaintiff's ability to use her hands for fine

22 manipulation from occasional to frequent.  (AR 277, 279).

23

24 **C.   Vocational Expert's Testimony**

25

26     At the hearing before the ALJ, Vocational Expert ("VE") Jane Hale

27 testified without objection by Plaintiff's attorney.  (AR 58).  The VE

28

8

testified that she had reviewed the vocational exhibits in the file, (AR 59), and described Plaintiff vocationally:

> I identify three separate occupations.  The first one would be small parts assembler, DOT 739.687-030, considered light, unskilled work, SVP two.  The second job in the apartment would most closely match that of a day worker, DOT 301.687.014, which is medium, unskilled work, SVP two.  And the third job working in the resorts would be a motel cleaner, DOT 323.687-014 and that is light, unskilled work, SVP two.

(AR 60).

The ALJ then asked the VE to consider whether Plaintiff could perform any of her past relevant work given the hypothetical limitations that she could lift twenty pounds occasionaly, ten pounds frequently, stand and/or walk six hours, and perform fine and gross manipulation frequently.  (AR 60-61).  The VE testified that given this set of limitations, Plaintiff could perform her past relevant work as a motel cleaner.  (AR 61).  The VE explained that Plaintiff would not be able to perform her past work as an assembler given the hypothetical limitations because that job requires continuous hand and finger activity.  (Id.).

Plaintiff's attorney then asked the VE to consider whether Plaintiff could perform any of her past relevant work given the hypothetical limitations that she could lift fifteen pounds and use her

hands for fifteen to twenty minutes, but then would have to rest her hands for twenty to twenty-five minutes.  (AR 61).  The VE testified that given this set of limitations, Plaintiff would not be capable of performing any of her past relevant work.  (Id.).

Finally, Plaintiff's attorney asked the VE to consider whether Plaintiff could perform any of her past relevant work given the hypothetical limitations that she could lift fifteen pounds and use her hands for thirty minutes, but then would have to rest her hands for ten minutes.  (AR 61).  The VE testified that given this set of limitations, Plaintiff would not be capable of performing any of her past relevant work.  (AR 62).

**D.    Plaintiff's Testimony**

In her daily activities questionnaire, Plaintiff reports that she lives in a house with her family.  (AR 134).  Plaintiff states that she is unable to assist in normal home cleaning activities because of the pain in her wrists.  (Id.).  For example, Plaintiff states that she cannot wash dishes, cook for long periods of time, or chop fruits and vegetables.  (Id.).  Plaintiff states that she only walks to and from the car and is able to drive her grandchildren to school and on errands.  (Id.).  Plaintiff states that she can carry minimal groceries from the car into the house and that she can carry fruits and vegetables from the refrigerator.  (AR 135).  Plaintiff further states that she can straighten up the bedrooms, do minor sweeping, and a few dishes.  (Id.).

At the hearing before the ALJ, Plaintiff appeared with counsel and testified through a Spanish language interpreter. (AR 40). Plaintiff explained that during her last job as an assembler, she worked eight-hour days and could stand or sit at her option. (AR 44-45). Plaintiff stated that the heaviest weight she was required to lift or carry as an assembler was somewhere between eight and fifteen pounds. (AR 45) ("10, 8, maybe 15 pounds maximum."). Plaintiff explained that during her prior job as a housekeeper, she worked eight-hour days and either stood or walked for six hours. (AR 46). Plaintiff stated that she did not have to carry heavy weights, but was required to push a cart containing supplies that weighed fifteen to twenty pounds at most. (Id.) ("20, 15 pounds would be the most.").

Plaintiff testified that she stopped working in 2005 because her daughter became sick with cancer. (AR 49). Plaintiff explained that she took care of her daughter "[d]ay and night." (Id.). Plaintiff estimated that she took care of her daughter for approximately eight or nine months before attempting to return to work. (Id.). Plaintiff stated that she attempted to return to her prior employer as an assembler, but that they did not have a position for her. (AR 50). Plaintiff further stated that she could not return to her job as an assembler because of her wrist injury. (Id.). Plaintiff explained that she takes Advil and Tylenol for her pain. (AR 51). Plaintiff stated that with the help of her medication, she can sometimes use her arms and hands for longer than fifteen to twenty minutes. (AR 51-52); (AR 52) ("Sometimes, yes; sometimes, no."). Plaintiff explained that she also uses exercise and massage to help reduce the symptoms in her arms and

11

hands.  (AR 52).  Plaintiff stated that afer she stopped working, she had physical therapy for about five months.  (Id.).

When asked if she had sought medical treatment for the swelling in her arms, Plaintiff testified that her doctor told her nothing was wrong with her.  (See AR 51) ("[T]he doctor told me that I'm fine and I've got nothing wrong.").  When asked if she sought treatment from other doctors, Plaintiff testified that she did not seek out additional treatment because she could not afford to.  (See AR 52).  Plaintiff stated that she did not seek free treatment from county medical facilities because she was ignorant of these options.  (See AR 53).  However, Plaintiff also stated that she obtained $12,000 from her worker's compensation settlement, but did not use the money to obtain medical treatment.  (See AR 54).  Plaintiff explained that she used the money "trying to help [her] son get ahead, have success."  (Id.).  Plaintiff further explained that she used some of the worker's compensation settlement to travel to Cancun and to straighten out some paperwork for her husband in Mexico.  (See AR 56) ("To straighten out some paperwork for my husband and his land in Mexico, and going to Cancun.").

## IV.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him

12

from engaging in substantial gainful activity[2] and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. § 416.920.  The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled. If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

---

[2]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. § 416.910.

13

1    (5)   Is the claimant able to do any other work?  If not, the
2          claimant is found disabled.  If so, the claimant is
3          found not disabled.

4

5  <u>Tackett</u>, 180 F.3d at 1098-99; see also <u>Bustamante v. Massanari</u>, 262 F.3d
6  949, 953-54 (9th Cir. 2001); 20 C.F.R. § 416.920(b)-(g)(1).

7

8       The claimant has the burden of proof at steps one through four and
9  the Commissioner has the burden of proof at step five.  <u>Bustamante</u>, 262
10 F.3d at 953-54.  If, at step four, the claimant meets his burden of
11 establishing an inability to perform the past work, the Commissioner
12 must show that the claimant can perform some other work that exists in
13 "significant numbers" in the national economy, taking into account the
14 claimant's residual functional capacity,[3] age, education, and work
15 experience.  <u>Tackett</u>, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1).  The
16 Commissioner may do so by the testimony of a VE or by reference to the
17 Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart
18 P, Appendix 2 (commonly known as "the Grids").  <u>Osenbrock v. Apfel</u>, 240
19 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional
20 (strength-related) and nonexertional limitations, the Grids are
21 inapplicable and the ALJ must take the testimony of a vocational expert.
22 <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000).

23

24

25

26

27      [3]   Residual functional capacity is "the most [one] can still do
28 despite [his] limitations" and represents an assessment "based on all
   the relevant evidence."  20 C.F.R. § 416.945(a).

14

**V.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 28).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 7, 2005.  (AR 22).  At step two, he found that Plaintiff suffered from the medically-determinable conditions of overuse syndrome/tendonitis in both wrists, with MRI evidence of post traumatic intra-articular changes in the radial carpal joints bilaterally.  (Id.).  At step three, the ALJ found that the impairments at step two did not meet or medically equal a listed impairment.  (AR 23).

At step four, the ALJ found that Plaintiff was capable of performing her past relevant work.  (AR 27).  Based on his review of the record, the ALJ concluded that the Plaintiff had the residual functional capacity to "lift and carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six out of eight hours, and sit for six hours in an eight-hour workday."  (AR 23).  Additionally, the ALJ noted that Plaintiff could "frequently climb, balance, stoop, kneel, crouch, and crawl."  (Id.).  The ALJ found that Plaintiff could "frequently perform fine and gross manipulation."  (Id.).  He found that even if Plaintiff were limited to occasional fine manipulation, she could perform the duties of a motel cleaner or day worker.  (AR 28).  Thus, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, at any time from September 7, 2005 through the date of this decision."  (AR 28).

15

# VI.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id.  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

**VII.**

**DISCUSSION**[4]

Plaintiff claims that the ALJ erred for four reasons.  First, Plaintiff contends that the ALJ failed to properly consider the opinion of the Agreed Medical Examiner, Dr. Ainbinder.  (<u>See</u> Memorandum in Support of Plaintiff's Complaint ("Complaint Memo.") at 2-4).  Second, Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly relied on the opinion of the consultative examiner, Dr. Bilezikjian.  (<u>See</u> <u>id.</u> at 4-6).  Third, Plaintiff contends that the ALJ failed to properly consider Plaintiff's subjective symptom testimony.  (<u>See</u> <u>id.</u> at 6-10).  Fourth, Plaintiff contends that the ALJ failed to properly consider the VE's testimony.  (<u>See</u> <u>id.</u> at 10-12).  For the reasons discussed below, this Court disagrees with each of Plaintiff's contentions.

**A.   The ALJ Gave Appropriate Weight To The Agreed Medical Examiner's Opinion**

Plaintiff's first claim is that the ALJ failed to properly consider the opinion of the Agreed Medical Examiner, Dr. Ainbinder.  (<u>See</u> Complaint Memo. at 2-4).  Specifically, Plaintiff argues that the ALJ improperly rejected Dr. Ainbinder's limitation that Plaintiff could only use her upper extremities for thirty minutes followed by a ten minute break.  (<u>See</u> <u>id.</u> at 2).  Plaintiff further argues that the ALJ improperly rejected Dr. Ainbinder's limitation that Plaintiff could only

---

[4]   The Court will address Plaintiff's claims in a different order than presented in the Complaint.

17

1  lift fifteen pounds.  (<u>See</u> Reply Memorandum in Support of Plaintiff's
2  Complaint ("Reply") at 2).  This Court disagrees.

4  **1.  As An Examining Physician, The Agreed Medical Examiner's**
5  **Opinion Was Entitled To No More Weight Than That Of A**
6  **Consultative Physician**

8  Dr. Ainbinder was an examining physician whose contact with
9  Plaintiff was analogous to that of a consultative physician.  (AR 246,
10  253-54).  Indeed, Dr. Ainbinder examined Plaintiff on November 7, 2006,
11  (AR 223), and noted that "[n]o further appointments [were] scheduled."
12  (AR 232).  Examining physicians are nontreating sources.  Implementing
13  regulations define a "nontreating source" to mean "a physician,
14  psychologist, or other acceptable medical source who has examined [the
15  claimant] but does not have, or did not have, an ongoing treatment
16  relationship with [the claimant]."  20 C.F.R. § 404.1502.  This term
17  "includes an acceptable medical source who is a consultative examiner
18  for [the Agency], when the consultative examiner is not [the claimant's]
19  treating source."  <u>Id.</u>

21  Dr. Ainbinder was not Plaintiff's treating source and examined
22  Plaintiff only "in the capacity of an Agreed Medical Examiner."  (AR
23  223).  Thus, he was only an examining source.  Further, his opinion was
24  of limited value because he only examined Plaintiff once.  To qualify
25  for disability benefits, a claimant must demonstrate a medically-
26  determinable physical or mental impairment that prevents her from
27  engaging in substantial gainful activity and that is expected to result
28  in death or to last for a continuous period of at least twelve months.

1  See Reddick, 157 F.3d at 721.   Because Dr. Ainbinder only examined

2  Plaintiff once, it would be difficult for him to evaluate whether her

3  alleged impairment would be expected to result in death or to last for

4  at least twelve months.   Thus, the ALJ was entitled to give less weight

5  to Dr. Ainbinder's opinion.

6

7      **2.     The ALJ Gave Specific And Legitimate Reasons For Giving Less**

8             **Weight To The Agreed Medical Examiner's Opinion**

9

10      The uncontradicted opinion of a consultative examiner can only be

11  rejected for "clear and convincing" reasons.   Lester v. Chater, 81 F.3d

12  821, 830 (9th Cir., as amended April 9, 1996).   However, where a

13  consultative examiner's opinion is contradicted by another doctor, the

14  ALJ can reject this opinion by providing "specific and legitimate

15  reasons that are supported by substantial evidence in the record."   Id.

16  at 830-31.

17

18      Here, Dr. Ainbinder's opinion was contradicted by the opinion of

19  Dr. Bilezikjian, the consultative orthopedist.   Indeed, Dr. Bilezikjian

20  reviewed Dr. Ainbinder's records in forming his opinion, (AR 273), but

21  ultimately assessed Plaintiff as having less restrictive limitations.

22  (AR 277).   Dr. Bilezikjian determined that Plaintiff retained the RFC

23  to push, pull, lift and carry twenty pounds occasionally and ten pounds

24  frequently, walk and stand for six hours out of an eight-hour work day,

25  frequently bend, kneel, stoop, crawl and crouch and frequently perform

26  gross manipulation and fine fingering.   (AR 276-77).   Thus, Dr.

27  Bilezikjian's opinion contradicted Dr. Ainbinder's findings that

28  Plaintiff could only use her upper extremities for thirty minutes

19

followed by a ten minute break and that Plaintiff could only lift fifteen pounds. (AR 254). Accordingly, the ALJ was entitled to reject Dr. Ainbinder's opinion by providing specific and legitimate reasons. See Lester, 81 F.3d at 830-31.

The ALJ provided specific and legitimate reasons for giving less weight to Dr. Ainbinder's opinion. With regard to Dr. Ainbinder's finding that Plaintiff could only use her upper extremities for thirty minutes followed by a ten minute break, the ALJ specifically declined to adopt this limitation "because Dr. Ainbinder himself did not believe that this was a disabling limitation." (AR 27). As explained by the ALJ, Dr. Ainbinder "stated that the claimant 'does not appear to be a Qualified Injured Worker for Vocational Rehabilitation purposes.'" (Id.) (quoting AR 254). Plaintiff argues that the ALJ misconstrued Dr. Ainbinder's opinion because "Dr. Ainbinder was specifically indicating that [Plaintiff] had a disabling condition that imposed the specific limitations provided." (Complaint Memo. at 2). However, the fact that Dr. Ainbinder's opinion was ambiguous and may have been misconstrued by the ALJ is a specific and legitimate reason for giving it less weight. See 20 C.F.R. § 404.1527(d)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."); 20 C.F.R. § 416.927(d)(3)(same); see also Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) ("We will not reverse credibility determinations of an ALJ based on contradictory or ambiguous evidence.").

With regard to Dr. Ainbinder's finding that Plaintiff could only lift fifteen pounds, the ALJ pointed out that "Dr. Ainbinder did not

assess a specific residual functional capacity, but instead recommended a Functional Capacity Evaluation." (AR 26) (citing AR 217, 231). Indeed, Plaintiff concedes in her Reply that "Dr. Ain[b]inder was equivocal in his opinion because he wanted a functional capacity evaluation." (Reply at 4). As noted above, the fact that Dr. Ainbinder's opinion was ambiguous or equivocal is a specific and legitimate reason for giving it less weight. See 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); see also Johnson, 60 F.3d at 1434 ("We will not reverse credibility determinations of an ALJ based on contradictory or ambiguous evidence.").

Moreover, even if the ALJ failed to provide specific and legitimate reasons for giving less weight to Dr. Ainbinder's opinion, any error was harmless because substantial evidence supports the ALJ's ultimate RFC determination. See Carmickle v. Comm'r of Social Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (holding that an ALJ's error is harmless so long as substantial evidence supports the ultimate conclusion). Indeed, the ALJ specifically credited the opinion of Dr. Bilezikjian, which contradicted the limitations assessed by Dr. Ainbinder. (See AR 27) ("I accept the opinion of the consultative orthopedist, which opinion was based on a review of Dr. Ainbinder's records, an examination of [Plaintiff], and a review of her subjective symptoms."). The ALJ further noted that the State Agency physician, Dr. Limos, adopted the opinion of Dr. Bilezikjian and contradicted the opinion of Dr. Ainbinder. (See AR 27) ("And the consultative orthopedists's opinion was adopted by the State Agency Medical consultant."); (AR 26) ("A State Agency medical consultant determined that [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for

21

1   six out of eight hours, and sit for six hours in an eight-hour

2   workday.").

3

4       Accordingly, the opinions of Dr. Bilezikjian and Dr. Limos provide

5   substantial evidence to support the ALJ's ultimate RFC.   Resolving

6   conflicts in the medical evidence is solely within the province of the

7   ALJ, and the ALJ was entitled to rely on the opinions of Dr. Bilezkjian

8   and Dr. Limos instead of Dr. Ainbinder.   See Andrews v. Shalala, 53 F.3d

9   1035, 1041 (9th Cir. 1995) (explaining that it is solely the province

10   of the ALJ to resolve conflicts in the medical evidence).

11

12       In sum, the Court concludes that the ALJ appropriately weighed Dr.

13   Ainbinder's opinion as that of an examining physician and gave specific

14   and legitimate reasons for giving the opinion less weight.   Regardless,

15   any error was harmless because the opinions of Dr. Bilezikjian and Dr.

16   Limos provide substantial evidence to support the ALJ's ultimate RFC.

17   Accordingly, remand is not required.

18

19   **B.**   **The ALJ Provided Clear And Convincing Reasons To Reject**

20        **Plaintiff's Subjective Symptom Testimony**

21

22       Plaintiff's third claim is that the ALJ failed to properly consider

23   Plaintiff's subjective symptom testimony.   (See Complaint Memo. at 6-

24   10).   Specifically, Plaintiff argues that the ALJ's reasons for

25   rejecting her credibility were improper.   (See id. at 7-10).   Plaintiff

26   further argues that objective medical evidence in the record supports

27   her subjective symptom testimony.   (See Reply at 9).   This Court

28   disagrees.

22

1

2          To determine whether a claimant's testimony regarding subjective

3    pain or symptoms is credible, an ALJ must engage in a two-step analysis.

4    First, the ALJ must determine whether the claimant has presented

5    objective medical evidence of an underlying impairment "which could

6    reasonably be expected to produce the pain or other symptoms alleged."

7    Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal

8    quotation marks omitted).  The claimant, however, "need not show that

9    her impairment could reasonably be expected to cause the severity of the

10   symptom she has alleged; she need only show that it could reasonably

11   have caused some degree of the symptom."  Id.  Second, if the claimant

12   meets this first test, and there is no evidence of malingering, "the ALJ

13   can reject the claimant's testimony about the severity of her symptoms

14   only by offering specific, clear and convincing reasons for doing so."

15   Smolen, 80 F.3d at 1281.

16

17         Here, the ALJ found that Plaintiff's medically determinable

18   impairments could reasonably be expected to produce the symptoms she

19   alleged, but that her statements concerning the intensity, persistence

20   and limiting effects of those symptoms were not entirely credible.  (AR

21   24).  Because Plaintiff satisfied the first test and there was no

22   evidence of malingering, the ALJ was required to provide clear and

23   convincing reasons for rejecting Plaintiff's subjective symptom

24   testimony.  See Smolen, 80 F.3d at 1281.  The Court concludes that the

25   ALJ provided numerous clear and convincing reasons for rejecting

26   Plaintiff's subjective symptom testimony.

27

28

23

First, the ALJ noted that Plaintiff's failure to seek medical treatment was inconsistent with her subjective symptom testimony. (See AR 24); see also Johnson, 60 F.3d at 1434 (9th Cir. 1995) (holding that the plaintiff's failure to seek medical treatment was a clear and convincing reason to reject her subjective symptom testimony). Specifically, the ALJ pointed out that "Dr. Reisch discharged [Plaintiff] because she did not keep appointments." (Id.) (citing AR 211). Plaintiff states that she "can find no reference for this assertion" in the record. (Complaint Memo. at 7-8). However, Dr. Ainbinder reported that "[Plaintiff] was subsequently discharged by Dr. Reisch for lack of compliance to present for her scheduled appointments." (AR 212). The ALJ further noted that Plaintiff "did not seek other care until she saw the Agreed Medical Examiner, Dr. Dennis Ainbinder, in January 2007." (AR 25). Thus, Plaintiff's failure to seek medical treatment is a clear and convincing reason to reject Plaintiff's subjective symptom testimony. See Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) ("An ALJ is clearly allowed to consider . . . the unexplained absence of treatment for excessive pain."); Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) ("Another relevant factor may be unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." (internal quotation marks omitted)).

Plaintiff contends that her failure to seek medical treatment is not a permissible basis to discount her testimony because "she could not afford treatment." (Complaint Memo. at 7). However, Plaintiff admitted that she obtained $12,000 from her worker's compensation settlement, yet did not use any of the money to obtain medical treatment. (See AR 54).

24

Plaintiff explained that she used the money "trying to help [her] son get ahead, have success." (Id.). Plaintiff further explained that she used some of the worker's compensation settlement to travel to Cancun and to straighten out some paperwork for her husband in Mexico. (See AR 56) ("To straighten out some paperwork for my husband and his land in Mexico, and going to Cancun."). Plaintiff's stated reason for failing to seek medical treatment, a lack of funds, is contradicted by the record.

Second, the ALJ noted that Plaintiff's use of only over-the-counter medication was inconsistent with her subjective symptom testimony. (See AR 25); see also Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (holding that the plaintiff's conservative treatment was a clear and convincing reason to reject her subjective symptom testimony); accord Johnson, 60 F.3d at 1434. Indeed, Plaintiff testified that she takes only Tylenol and Advil. (See AR 51). Plaintiff explained that "no doctor ha[d] prescribed medication for [her] arms or hands." (Id.). Additionally, Plaintiff reported in her Disability Report that she does not currently take any medication. (See AR 118). Thus, Plaintiff's extremely conservative treatment is a clear and convincing reason to reject her subjective symptom testimony.

Plaintiff again argues that "[t]his is not a proper basis because she already explained that she could not afford treatment." (Reply at 8). As set forth above, however, Plaintiff admitted that she obtained $12,000 from her worker's compensation settlement, yet did not use any of the money to obtain medical treatment. (See AR 54). Moreover, Plaintiff testified that the over-the-counter medication was effective

to treat her symptoms.  (See AR 55) ("I think they're strong. . . . They relax me.").  Thus, Plaintiff cannot claim that she only used over-the-counter medication because of a lack of financial means.

Third, the ALJ noted that Plaintiff "inconsistently described the reasons she stopped working." (AR 26).  Indeed, Plaintiff reported to Dr. Bilezikjian that she stopped working on September 7, 2005 because of wrist pain and numbness in her forearm and hands.  (AR 273). However, Plaintiff testified that she stopped working in 2005 for eight or nine months because her daughter was ill.  (AR 49).  Plaintiff now asserts that this inconsistency was due to a "misunderstanding." (Complaint Memo. at 8).  Plaintiff submitted a declaration in support of her Request for Review to the Appeals Council in which she stated she was "nervous at the hearing" and meant to testify that she stopped working to care for her daughter in June of 2003.  (AR 13).  Plaintiff also submitted a letter from Stephen J. Forman, M.D., a staff physician at City of Hope, in which he states that Plaintiff's daughter became ill in June of 2003.  (AR 14).

However, even if Dr. Forman's letter explains Plaintiff's inconsistent testimony regarding why she stopped working, the letter directly contradicts Plaintiff's testimony about her subjective symptoms.  Indeed, Dr. Forman states that Plaintiff provided total care for her daughter from June of 2003 to July of 2006, including helping "her manage with all aspects of daily living activities and also help[ing] her get to her appointments." (AR 14).  The fact that Plaintiff was capable of providing her daughter with this level of care is inconsistent with Plaintiff's statements of disabling pain.  See

26

Tommasetti, 533 F.3d at 1040 (holding that the plaintiff's ability to care for his ailing sister for "an extended time" was a clear and convincing reason to reject his subjective symptom testimony).

Finally, the ALJ repeatedly noted that the medical evidence contradicted Plaintiff's subjective symptom testimony. (See AR 24-26). Specifically, the ALJ pointed out that on "the day [Plaintiff] identifies as her disability onset date, an orthopedic specialist and treating physician, Dr. Robert Reisch, told her to 'return to work at once with no limitations.'" (AR 24) (quoting AR 208). Indeed, on September 7, 2005, Dr. Reisch concluded that Plaintiff's status had "improved as expected," that Plaintiff's "forearm/writs tendonitis [was] improving," and that Plaintiff could return to "full duty." (AR 208). The ALJ further pointed out that Plaintiff had "full motor power in her writs flexors and extensors" and "there [was] no atrophy." (AR 25) (citing AR 215). Indeed, in his January 2, 2007 report, Dr. Ainbinder assessed Plaintiff as having full motor power without any atrophy, (AR 215), found that Plaintiff was "capable of working modified duties," and concluded that further treatment "was not medically warranted or reasonable." (AR 216).

Additionally, the ALJ noted that when Plaintiff sought medical treatment, one of the "doctors told her that nothing [was] wrong." (AR 24) (citing Plaintiff's testimony). Indeed, Plaintiff testified that she sought medical treatment for the swelling in her arms, but that "the doctor told [her] that [she was] fine and [that she had] nothing wrong." (AR 51). Thus, the fact that the medical evidence contradicted Plaintiff's claims is a clear and convincing reason to reject her

subjective symptom testimony.  See Johnson, 60 F.3d at 1434 (holding
that "contradictions between claimant's testimony and the relevant
medical evidence" provided clear and convincing reasons to reject her
subjective symptoms testimony).

     In sum, the ALJ cited numerous clear and convincing reasons to
reject Plaintiff's subjective symptom testimony.  Accordingly, the ALJ
was entitled to reject Plaintiff's testimony regarding the intensity,
persistence, and limiting effects of her symptoms.

**C.   The ALJ Properly Assessed Plaintiff's Residual Functional Capacity**

     Plaintiff's second claim is that the ALJ's RFC determination is not
supported by substantial evidence because the ALJ improperly relied on
the opinion of the consultative examiner, Dr. Bilezikjian.  (See
Complaint Memo. at 4-6).  Specifically, Plaintiff argues that Dr.
Bilezikjian's opinion cannot provide substantial evidence for the RFC
determination because Dr. Bilezikjian amended his opinion regarding
Plaintiff's ability to perform fine manipulation.  (See id. at 4-5;
Reply at 5-6).  The Court disagrees.

     Residual functional capacity is defined as what the plaintiff can
still do despite existing exertional and nonexertional limitations.  See
Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Social
Security Ruling 96-8p provides in relevant part: "RFC is an assessment
of an individual's ability to do sustained work-related physical and
mental activities in a work setting on a regular and continuing basis."
SSR 96-8p, 1996 WL 374184, at *1 (SSA July 2, 1996).  At Step Five, "[a]

regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id. (internal quotation marks omitted). "In determining residual functional capacity, the ALJ must consider subjective symptoms such as fatigue and pain." Smolen, 80 F.3d at 1291.

Here, the ALJ found that Plaintiff had the RFC to "lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for six out of eight hours, and sit for six hours in an eight-hour workday." (AR 23). The ALJ further found that Plaintiff could "frequently climb, balance, stoop, kneel, crouch and crawl" and could "frequently perform fine and gross manipulation." (Id.). In making this determination, the ALJ considered Plaintiff's credibility and the medical evidence, both discussed above. (See AR 23-26).

Plaintiff contends that her RFC should be limited to only "occasional" fine manipulation instead of "frequent." (Complaint Memo. at 4). Plaintiff's argument is based on the fact that Dr. Bilezikjian initially assessed her as only being capable of "occasional" fine manipulation. (AR 279). Indeed, Dr. Limos, a state agency physician, contacted Dr. Bilezikjian and asked him to reconsider this finding. (Id.). Dr. Limos argued that the objective medical evidence supported a finding that Plaintiff could use her hands for fine manipulation on a frequent basis and that Plaintiff was "not fully credible." (Id.). Dr. Limos pointed out that Plaintiff was not taking any medication for pain and was not using any splints or braces. (Id.). Dr. Limos further noted that there was "no atrophy" and "only some tenderness." (Id.). Finally, Dr. Limos pointed to the fact that Plaintiff drives her grandchildren to and from school, drives ten miles, does minor sweeping,

1    uses a broom, does a few dishes, and straightens the bedroom.  (Id.).
2    Ultimately, Dr. Bilezikjian amended his finding regarding Plaintiff's
3    ability to use her hands for fine manipulation from "occasional" to
4    "frequent."  (AR 277).

5

6        Plaintiff argues that Dr. Bilezikjian's amendment was improper
7    because he did not provide any explanation for the change.  (See
8    Complaint Memo. at 4).  As set forth above, however, Dr. Limos provided
9    several persuasive reasons for Dr. Bilezikjian to reconsider his
10   assessment.  (See AR 279).

11

12       Moreover, the ALJ concluded that "even if [he] decided that
13   [Plaintiff] [could] only occasionally perform fine manipulation, [the]
14   decision would not change."  (AR 26).  Plaintiff contends that "[t]his
15   is not the point" because "remand is warranted for proper consideration
16   of reliable evidence when formulating an RFC." (Reply at 6).  However,
17   even if the ALJ erred by finding that Plaintiff could perform frequent
18   fine manipulation, no remand is required as long as the ALJ's ultimate
19   conclusion regarding disability remains legally valid.  See Carmickle,
20   533 F.3d at 1162-63 (holding that no remand is required as long as the
21   ALJ's ultimate disability determination remains legally valid).

22

23       Here, any error is harmless because the ALJ's ultimate finding of
24   non-disability remains legally valid, regardless of whether Plaintiff
25   could perform fine manipulation frequently or occasionally.  Indeed, the
26   ALJ found that "even if [Plaintiff] were limited to occasional fine
27   manipulation, she could perform the duties of a Motel Cleaner, as
28   actually performed and as generally performed."  (AR 28).  The ALJ noted

that "the Dictionary of Occupational Titles states that this job requires only occasional fine manipulation." (Id.); see also DOT 323.687-014, 1991 WL 672783 (stating that the job of motel cleaner requires "[f]ingering" only "[o]ccasionally"). The ALJ was entitled to rely on the Dictionary of Occupational Titles to determine that Plaintiff could perform her past relevant work as a motel cleaner. See 20 C.F.R. § 404.1566(d)(1) (stating that the Agency will take administrative notice of reliable job information from the Dictionary of Occupational Titles).

In sum, the ALJ properly relied on Dr. Bilezikjian's amended opinion to find that Plaintiff could perform frequent fine manipulation because Dr. Limos provided several persuasive reasons for Dr. Bilezikjian to reconsider his initial assessment. Regardless, any error was harmless because the ALJ expressly found that Plaintiff could perform her past relevant work even if she could only perform occasional fine manipulation. Accordingly, remand is not required.

**D.   The ALJ Properly Considered The VE's Testimony**

Plaintiff's fourth claim is that the ALJ failed to properly consider the VE's testimony. (See Complaint Memo. at 10-12). Specifically, Plaintiff contends that the ALJ erroneously rejected the VE's testimony that the occupation of day worker constituted medium work. (See id. at 11). This Court disagrees.

At the hearing, the VE testified that Plaintiff's past relevant work included the following three occupations: (1) "small parts

31

assembler, DOT 739.687-030, considered light, unskilled work, SVP two";
(2) "day worker, DOT 301.687.014, which is medium, unskilled work, SVP
two"; and (3) "motel cleaner, DOT 323.687-014 and that is light,
unskilled work, SVP two." (AR 60). The ALJ asked the VE to consider
whether Plaintiff could perform any of her past relevant work given the
hypothetical limitations that she could lift twenty pounds occasionally,
ten pounds frequently, stand and/or walk six hours, and perform fine and
gross manipulation frequently. (See AR 60-61). The VE testified that
given this set of limitations, Plaintiff could perform her past relevant
work as a motel cleaner, but could not perform the occupations of either
small parts assembler or day worker. (AR 61).

The ALJ acknowledged the VE's testimony that Plaintiff could not
perform her past relevant work as a day worker because "the occupation
of Day Worker is medium work," but concluded that Plaintiff "[could]
perform the occupation of Day Worker as she actually performed it." (AR
27-28). The ALJ noted that "the job of Day Worker requires only
occasional fine manipulation" according to the Dictionary of
Occupational Titles." (AR 28); see also DOT 301.687-014, 1991 WL 672654
(stating that the job of day worker requires "[f]ingering" only
"[o]ccasionally"). Social Security Ruling 00-4p states that "[n]either
the DOT nor the VE . . . automatically 'trumps' when there is a
conflict." SSR 00-4p, 2000 WL 1898704, at *2. Rather, the ALJ must
elicit a reasonable explanation from the VE for any conflict before
relying on the VE instead of the Dictionary of Occupational Titles. Id.
In the absence of such explanation for relying on the VE, Social
Security Ruling 00-4p states that "we rely primarily on the DOT." Id.;
see also 20 C.F.R. § 404.1566(d)(1) (stating that the Agency will take

administrative notice of reliable job information from the Dictionary of Occupational Titles).  Thus, the ALJ was entitled to rely on the Dictionary of Occupational Titles to find that Plaintiff could perform her past relevant work as a day worker.

Regardless, any error was harmless because the ALJ also found that Plaintiff could perform her past relevant work as a motel cleaner.  (See AR 28); see also Carmickle, 533 F.3d at 1162-63 (holding that no remand is required as long as the ALJ's ultimate disability determination remains legally valid).  Plaintiff argues that the ALJ's finding that she could perform her past relevant work as a motel cleaner is not supported by substantial evidence because the ALJ relied on Dr. Bilezikjian's opinion.  (See Complaint Memo. at 12; Reply at 10).  As set forth above, however, the ALJ was entitled to rely on the opinion of Dr. Bilezikjian.  See supra Part VII.C.

In sum, the ALJ was entitled to rely on the Dictionary of Occupational Titles to conclude that Plaintiff could perform her past relevant work as a day worker.  Regardless, any error was harmless because the ALJ also found that Plaintiff could perform her past relevant work as a motel cleaner.  Accordingly, the Court concludes that Plaintiff has not met her burden of proof to demonstrate that she cannot return to her past relevant work.  See Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (holding that the claimant has the burden of proof to demonstrate that they cannot perform past relevant work).

33

# VIII.

## CONCLUSION

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[8] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: September 21, 2010

                                        /S/
                              _____
                              SUZANNE H. SEGAL
                              UNITED STATES MAGISTRATE JUDGE

_____

[8]  This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."